UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  Chapter 7

William I. Smith and Cheryl L. Smith,  Case No. 14-47317

    Debtors.  Hon. Phillip J. Shefferly
_____/

**OPINION AWARDING FINAL FEES AND
EXPENSES TO ATTORNEY FOR CHAPTER 7 TRUSTEE**

This opinion deals with the final application for fees and expenses filed by the attorney for the Chapter 7 Trustee in this case. The largest creditor in the case has objected. The Court heard the fee application and the objection on August 26, 2015. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons explained in this opinion, the Court will award final fees in the amount of $15,199.00 and reimbursement of expenses in the amount of $334.46.

**Background**

William Smith ("William") and Cheryl Smith ("Cheryl") filed a joint petition under Chapter 7 of the Bankruptcy Code on April 28, 2014. Their schedules show that William was the sole owner of their home located at 9080 Rattle Run Road, Columbus Township, Michigan ("Columbus Property"). The Debtors' schedules also show that William owned a 1/3 interest in property located at 5635 Grandview, Newport, Michigan ("Newport Property"). According to the Debtors' schedules, the Columbus Property had a value of $124,963.00, and his 1/3 interest in the Newport Property had a value of $19,666.66. The Debtors' schedules also show that there was a first mortgage on the Columbus Property in the amount of $36,847.49, and the Newport Property

was completely unencumbered. Even after William's exemption in the Columbus Property in the amount of $35,300.00, the Debtors' schedules show that there was equity for the bankruptcy estate in both in the Columbus Property and the Newport Property. The Debtors' schedules list total unsecured debts in the amount of $221,166.60.

Stuart A. Gold is the Chapter 7 trustee ("Trustee"). On May 30, 2014, the Trustee filed a verified statement of disinterestedness, pursuant to Local Bankruptcy Rule 2014-1(c) (E.D.M.), stating that the Trustee's law firm, Gold, Lange & Majoros, P.C. ("Law Firm"), would be acting as the attorney for the Trustee in this case. On July 8, 2014, the Trustee obtained an order authorizing him to employ Jeffrey Kakos, a real estate broker, to assist the Trustee in marketing and selling the Columbus Property.

In one respect, the Debtors' bankruptcy case went very smoothly. The Debtors received their discharge on August 5, 2014. However, in other respects, the bankruptcy case was more complicated. First, on August 1, 2014, Edith Radulovich ("Radulovich") the largest creditor in the case, filed an adversary proceeding against William under § 523(a)(4) of the Bankruptcy Code. Radulovich alleged that William was previously married to Radulovich's sister, Shirley Wilmoth ("Shirley"), and that William and Shirley had fraudulently taken funds from Radulovich's mother, Pearl Wilmoth, and converted them for their own benefit. The complaint further alleged that Radulovich obtained a judgment in state court against William and Shirley on September 26, 2001 in the amount of $150,000.00 ("State Court Judgment"). Although Shirley is now deceased, Radulovich's complaint sought a determination that the State Court Judgment is a nondischargeable debt of William. On March 10, 2015, Radulovich entered into a stipulation with William providing

for a consent judgment in her favor that could be satisfied by William paying $16,000.00. That disposed of the adversary proceeding brought by Radulovich.

Radulovich was also involved in another adversary proceeding, this time as a defendant. On September 15, 2014, the Trustee filed a complaint against Radulovich, alleging that William and Radulovich are co-owners of the Newport Property, and seeking authority under § 363(h) of the Bankruptcy Code to sell both the bankruptcy estate's interest and Radulovich's interest in the Newport Property. Through her attorney, Radulovich obtained several extensions of the date to answer the complaint. On January 13, 2015, the Trustee and Radulovich stipulated to enter an order that dismissed this adversary proceeding. Although the complaint in this adversary proceeding only pertained to the Newport Property, the stipulated order of dismissal also addressed the Columbus Property. Specifically, it provided that Radulovich would waive any and all secured claims that she had against any property of the bankruptcy estate, including any secured claims against the Columbus Property under a December 8, 2010 Notice of Judgment Lien that she had filed on the Columbus Property pursuant to the State Court Judgment. In addition, the stipulated order also stated that the proof of claim filed by Radulovich in the bankruptcy case would be allowed and reclassified as a general unsecured claim in the amount of $262,561.35.

While the two adversary proceedings involving Radulovich were being resolved, the Trustee filed a motion in the bankruptcy case on February 4, 2015 to sell the Columbus Property free and clear of all liens and encumbrances. Radulovich did not object to the motion, nor did any other party in interest object. Based on a certificate of no response, the Trustee requested that the Court grant the motion and authorize the Trustee to sell the Columbus Property. On February 24, 2015, the Court entered an order granting the Trustee's motion. The Trustee then moved forward to sell the

Columbus Property. According to the Trustee's report of sale filed on March 26, 2015, the Trustee sold the Columbus Property on March 20, 2015 for $177,722.37. After payment of closing costs, broker commissions, seller concessions and a payoff of the first mortgage, the bankruptcy estate netted $119,043.89 from the sale.

Shortly after the sale of the Columbus Property was closed, on April 3, 2015, the Law Firm filed a first application for interim compensation ("Interim Application") (ECF No. 50). In the Interim Application, the Law Firm sought fees for the period from May 29, 2014 through March 31, 2015 in the amount of $16,848.00 and reimbursement of expenses in the amount of $334.46. Neither Radulovich nor any other party in the case filed a timely objection. On April 28, 2015, the Law Firm filed a certificate of no response. Based on the certificate, and after conducting its own review of the Interim Application, the Court entered an order granting it on April 28, 2015 (ECF No. 53).

Subsequently, the Court learned that Radulovich had filed a late objection to the Interim Application on April 29, 2015 (ECF No. 54). Although Radulovich was represented by an attorney throughout the bankruptcy case and both adversary proceedings, Radulovich filed the objection pro se. Since it appeared to the Court that it was possible that Radulovich's objection may have crossed in the mail with the Law Firm's certificate of no response, and since Radulovich was the largest creditor in the bankruptcy case, the Court determined to schedule a hearing on her objection on May 29, 2015, even though her objection was not filed until after the Court had granted the Interim Application.

On May 29, 2015, the Court held the hearing. The Trustee, the Law Firm and Radulovich all appeared at the hearing. Radulovich appeared pro se. During a recess in the hearing, the parties

discussed postponing the hearing until after the Trustee had filed a final report and a final fee application. The parties explained that this would permit them the opportunity to discuss all of the services rendered by the Law Firm and address any questions that Radulovich may have about them. Based on the agreement of the parties, the Court adjourned the hearing.

Before the adjourned hearing took place, the Law Firm filed a final fee application ("Final Application") on July 29, 2015 (ECF no. 64). The Final Application requests that the Court award additional fees to the Law Firm for the period from April 1, 2015 through June 24, 2015 in the amount of $1,351.00, and requests that the interim award previously made by the Court become a final award.

On August 12, 2015, Radulovich, now represented by a new attorney, filed a supplemental objection ("Supplemental Objection") (ECF No. 72). In the Supplemental Objection, Radulovich objects to *any* fees being awarded to the Law Firm, including those fees that were previously awarded on an interim basis and subsequently paid to the Law Firm. Specifically, Radulovich first objects because neither the Interim Application nor the Final Application itemize the Law Firm's time in "project categories" as required by Local Bankruptcy Rule 2016-1(a)(15)(B). Second, Radulovich objects that all of the Law Firm's services were unreasonable and excessive. According to Radulovich, much of the work performed by the Law Firm pertained to the sale of the Columbus Property, and should have been performed by the Trustee, who is compensated on a commission basis, rather than by the Law Firm, which is compensated on an hourly basis. Third, Radulovich objects to any legal services performed by the Law Firm pertaining to the Newport Property because this property was of no value to the estate. Finally, Radulovich objects that many of the services

-5-

14-47317-pjs    Doc 82    Filed 09/14/15    Entered 09/14/15 16:00:49    Page 5 of 16

performed by the Law Firm were of the type that a para-professional could have performed at a lower hourly rate, or were clerical in nature for which no compensation should be paid.[1]

**Applicable Legal Standard**

"The payment of attorneys who are appointed pursuant to 11 U.S.C. § 327 is governed by 11 U.S.C. § 330[.]" Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.), 468 F.3d 326, 329 (6th Cir. 2006). Section 330(a)(1)(A) provides that the Court may award "reasonable compensation for actual, necessary services rendered by . . . [a] professional person, or attorney and by any paraprofessional person employed by any such person . . . ."

The Sixth Circuit Court of Appeals has directed that bankruptcy courts should use the lodestar method in determining reasonable attorney fees under § 330(a) of the Bankruptcy Code. Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334, 337 (6th Cir. 1991).

> The starting point in the lodestar analysis is to determine a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The next step in the analysis is to determine the lawyer's reasonable hours. If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper.

In re Williams, 357 B.R. 434, 438-39 (B.A.P. 6th Cir. 2007) (citations omitted).

"The burden of proof is on the professional requesting compensation for his or her services from the bankruptcy estate." In re Sharp, 367 B.R. 582, 585 (Bankr. E.D. Mich. 2007) (citing In re New Boston Coke Corp., 299 B.R. 432 (Bankr. E.D. Mich. 2003)). "'This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by debtor.'" In re Ulrich, 517 B.R. 77, 80 (Bankr.

---

[1] The Court will consider all of Radulovich's objections, even if they are untimely, because an award of interim fees is always subject to review as part of a final fee application.

E.D. Mich. 2014) (quoting In re Pettibone Corp., 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987)). "While the burden is on the applicant to justify a fee request, the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision." In re Williams, 357 B.R. at 439 (internal quotation marks and citation omitted). "Regardless whether objections are raised to the application seeking compensation from the bankruptcy estate, the Court has a duty to independently examine the reasonableness of the requested fees," In re J.F. Wagner's Sons Co., 135 B.R. 264, 266 (Bankr. W.D. Ky. 1991), and may "award compensation that is less than the amount of compensation requested," Cupps & Garrison, LLC v. Rhiel (In re Two Gales, Inc.), 454 B.R. 427, 433 (B.A.P. 6th Cir. 2011).

### Discussion

Radulovich's procedural objection has merit. L.B.R. 2016-1(a)(15)(B) requires that an attorney's application for fees itemize the applicant's time by "project categories" in the manner set forth in the United States Trustee Fee Guidelines whenever the cumulative amount of the fees sought exceeds $15,000.00. Here, the Law Firm's Final Application, together with the Interim Application, seek fees in the total amount of $18,199.00, obviously in excess of the threshold set by this rule. The purpose of requiring project categories for fees requested in excess of $15,000.00 is to provide creditors and the Court with relevant information to help them determine whether the requested fees are reasonable. Without the required project categories the creditors and the Court are left to ferret out the amount of time for each task. While the failure to comply with the local rule's requirement for project categories is not necessarily fatal to the Law Firm's request for fees,[2] it

---

[2] There is no specific remedy in L.B.R. 2016-1(a)(15)(B) for failure to comply with its project categories requirement.

makes the creditors' and the Court's task of determining whether the requested fees are reasonable more difficult.

Radulovich's second objection is more substantive: that the Trustee, and not the Law Firm, should have performed the services described in the Interim Application and the Final Application. Section 704(a) of the Bankruptcy Code lists specific duties that a Chapter 7 trustee is required to perform. One of those duties is to "(1) collect and reduce to money the property of the estate . . . ." According to Radulovich, all of the services required to sell the Columbus Property were services that the Trustee was duty bound to perform under this statute, and did not require the performance of lawyer services by the Law Firm. Radulovich argues that, by shifting the work to the Law Firm rather than performing it himself, the Trustee violated his statutory duty under § 704(a)(1) and acted to the detriment of the estate's creditors.

Radulovich is correct in her assertion that an attorney hired by a trustee should not be compensated on an hourly basis for those services that the trustee is required by statute to perform. Selling property is one such duty. Communications regarding a sale of property that do not require the performance of legal services should ordinarily be handled by the trustee. But it is also not uncommon for legal issues to surface when a trustee is selling property. The Bankruptcy Code recognizes the existence of such legal issues and authorizes a trustee to hire an attorney to represent the trustee in connection with those legal issues. 11 U.S.C. § 327(a). Moreover, the Bankruptcy Code authorizes a trustee to hire his or her own law firm for this purpose. 11 U.S.C. § 327(d).

In re Boltec Industries, Inc., no. 91-21463, 1993 WL 853018 (Bankr. E.D. Mich. Jan. 8, 1993) discussed the distinction between services that are required to be performed by a trustee and services that require an attorney in the context of a sale of property:

> The services listed above [of almost entirely telephone conferences] consist primarily of communicating with various parties regarding the sale of assets of the estate. The trustee in bankruptcy has a statutory duty to sell the property. 11 U.S.C. § 704(1). These services are to be performed by the trustee and not delegated to his lawyer. The attorney is not entitled to compensation for the performance of the trustee's duties.
>
> However, should the trustee encounter some unusual difficulties requiring legal counsel, then counsel can be retained and ought to be paid. Obviously, this would require a situation where pleadings and/or court appearances are required.

Id. at *2 (citations omitted).

The Court agrees with Radulovich that some of the Law Firm's time entries regarding the sale of the Columbus Property appear to be for work that the Trustee is required to perform under § 704(a)(1) and do not appear to require legal services by an attorney for the Trustee. For example, on June 16, 2014, Sandra L. O'Connor ("O'Connor"), an associate attorney with the Law Firm, made the following entries describing communications with Jeff Kakos, a real estate broker employed by the Trustee to sell the Columbus Property:

| | | |
|---|---|---|
| 6/16/2014 | Receipt and review of e-mail from Jeff Kakos regarding status of valuation for real property in Columbus Township; compose response | 0.10 hour |
| 6/16/2014 | Telephone conference with Jeff Kakos regarding initial valuation of property and anticipated course of action regarding same | 0.10 hour |
| 6/16/2014 | Receipt and review of e-mail from Jeff Kakos with initial valuation and attached comparables for Columbus Township property; compose response | 0.10 hour |

Similarly, from September 11, 2014 to September 15, 2014, O'Connor made the following entries:

-9-

| | | |
|---|---|---|
| 9/11/2014 | Telephone conference with Jeff Kakos regarding issues relating to sale of property, including unfinished projects and debtors' indications that they intent [sic] to take built-in items | 0.30 hour |
| 9/12/2014 | Receipt and review of e-mail from Jeff Kakos regarding information relating to hot tub; compose response regarding questions about sauna | 0.10 hour |
| 9/12/2014 | Receipt and review of e-mail from Jeff Kakos regarding intent to follow up with debtors regarding sauna; review and revise proposed stipulation and order for continued occupancy | 0.20 hour |
| 9/12/2014 | Receipt and review of e-mail from Jeff Kakos regarding follow up with debtor regarding remaining questions about proposed exclusions from sale; compose response | 0.10 hour |
| 9/12/2014 | Receipt and review of e-mail from broker regarding additional information relating to sauna and hot tub; compose response | 0.10 hour |
| 9/15/2014 | Receipt and review of e-mail from broker regarding additional information relating to sauna; compose response | 0.10 hour |

All of these entries describe communications with the real estate broker regarding the sale of the Columbus Property. The following entries describe similar communications with the real estate broker, communications regarding the valuation of vehicles, and communications regarding a termite inspection report: 6/14/14, 0.20; 6/13/14, 0.40; 6/13/14, 0.10; 6/16/14, 0.10; 6/18/14, 0.20; 6/18/14, 0.10; 6/19/14, 0.20; 9/3/14, 0.10; 9/4/14, 0.10; 9/5/14, 0.10; 9/8/14, 0.10; 9/11/14, 0.30; 9/12/14, 0.30; 1/14/15, 0.10; 1/15/15, 0.20; 1/21/15, 0.20; 1/22/15, 0.20; 1/22/15, 0.10; 1/22/15, 0.10; 1/26/15, 0.30; 1/27/15, 0.30; 1/27/15, 0.20; 2/3/15, 0.10; 2/3/15, 0.10; 2/4/15, 0.30; 2/5/15, 0.10; 2/6/15, 0.10; 2/9/15, 0.20; 2/9/15, 0.10; 2/17/15, 0.10; 2/17/15, 0.10; 2/19/15, 0.10; 2/25/15,

02.0; 2/25/15, 0.10; 2/27/15, 0.10; 3/5/15, 0.20; 3/5/15, 0.20; 3/5/15, 0.10; 3/6/15, 0.10; 3/13/15, 0.20; 3/13/15, 0.10; 3/23/15, 0.20; 3/23/15, 0.10; and 3/23/15, 0.10.

There is nothing in the description of services in these entries that indicates the performance of any legal work or the need for attention by an attorney. Nor is there any information contained in these descriptions to explain why the Law Firm performed these services rather than the Trustee. The Court agrees with Radulovich that the Law Firm cannot be compensated on an hourly basis for these services, as these are all services, as explained in Boltec, that are duties of the Trustee under § 704(a)(1).

However, not all of the Law Firm's time entries regarding the sale of the Columbus Property are for services that the Trustee is required to perform under § 704(a)(1). Drafting a motion and other pleadings to obtain Court approval of the sale of the Columbus Property is a legal service that the Trustee properly delegated to the Law Firm, for which the Law Firm is entitled to be paid. Preparation and review of conveyance instruments, title work and closing packages to ensure the legal sufficiency of a sale are likewise legal services that the Trustee properly delegated to the Law Firm. The Court rejects Radulovich's contention that the Law Firm cannot be paid for these services.

The Court also rejects Radulovich's third objection to the Law Firm's fees that prosecution of the adversary proceeding regarding the Newport Property was unnecessary because that property was of no value to the estate. William listed an unencumbered interest in the Newport Property with a value of $19,666.66. The Trustee was statutorily required to administer this interest and, because the Newport Property was co-owned with Radulovich, the Trustee properly delegated to the Law Firm the task of filing an adversary proceeding under § 363(h) of the Bankruptcy Code to monetize

-11-

the estate's interest in the Newport Property. The fact that the Trustee ultimately agreed to dismiss this adversary proceeding, as part of a global settlement with Radulovich that also provided for Radulovich to release her secured claim against the Columbus Property, does not change this analysis. The prosecution of the adversary proceeding regarding the Newport Property was a legal service that was both properly delegated by the Trustee to the Law Firm, and was reasonably likely to benefit the estate. All of these services are compensable to the Law Firm.

Radulovich makes a valid point in her fourth objection, that some of the services that were performed by the Law Firm could have been performed by a para-professional or, at the very least, down-streamed to someone with a lower hourly rate, while others were entirely clerical. The Interim Application and the Final Application show that the Law Firm performed 84 hours of services in this case. Of that total, 78.7 hours were performed by O'Connor, a very experienced and capable bankruptcy practitioner who practices regularly in this Court. The biography attached to the Final Application notes that O'Connor is board certified by the American Board of Certification for Consumer Bankruptcy Law. O'Connor's hourly rate in the Interim Application and the Final Application is $250.00. In the Court's experience, this hourly rate is within the range of reasonableness for an attorney of the skill and experience of O'Connor.

However, not all of the services performed by O'Connor required an attorney at her level and with her hourly rate. The following time entries are examples:

| | | |
|---|---|---|
| 10/10/14 | Receipt and review of filed stipulation and proposed order extending deadline for Edith Radulovich to answer complaint | 0.10 hour |
| 10/10/14 | Receipt and review of order extending deadline to answer complaint; note to file regarding same; calendar same | 0.10 hour |

-12-

| | | |
|---|---|---|
| 10/28/14 | Receipt and review of stipulation filed by Edith Radulovich to extend deadline to anser complaint; confirm requested changes made to same | 0.10 hour |
| 10/28/14 | Receipt and review of order extending deadline for Edith Radulovich to answer complaint; note to file regarding same | 0.10 hour |

Each of these services could have been performed by an attorney with much less skill and experience, or even a para-professional, at a much lower hourly rate, than O'Connor. The following entries describe similar services: 5/29/14, 0.20; 6/9/14, 0.20; 6/13/14, 0.20; 6/24/14, 0.10; 7/9/14, 0.20; 11/24/14, 0.10; 11/25/14, 0.10; 11/25/14, 0.10; 1/21/15, 0.10; 1/21/15, 0.10; and 1/22/15, 0.10.

Radulovich also argues that there are many entries in the Interim Application and Final Application that describe services that are ministerial or clerical in nature. For example, the Interim Application contains the following entries:

| | | |
|---|---|---|
| 3/3/2015 | Draft certificate of no response to broker fee application | 0.10 hour |
| 3/3/2015 | Attention to review and execution of certificate of no response to broker fee application; attention to submission of proposed order | 0.10 hour |

The following entries describe similar ministerial or clerical services: 5/29/14, 0.10; 5/30/14, 0.10; 5/30/14, 0.20; 6/6/14, 0.10; 6/11/14, 0.10; 6/12/14, 0.10; 6/12/14, 0.10; 6/13/14, 0.20; 6/13/14, 0.10; 6/13/14, 0.30; 6/17/14, 0.10; 6/18/14, 0.10; 7/9/14, 0.10; 7/30/14, 0.10; 8/6/14, 0.10; 8/20/14, 0.10; 9/3/14, 0.10; 9/18/14, 0.10; 9/19/14, 0.10; 3/4/15, 0.20; 3/5/15, 0.20; and 3/16/15, 0.10.

The Court agrees with Radulovich that these entries do not describe services that require the rendering of professional judgment, legal analysis or other traditional lawyering services. All of

-13-

them seem to be ministerial or clerical in nature. The Court does not consider them to be compensable.

Finally, Radulovich points out that there are some entries in the Interim Application and Final Application that are duplicative and therefore must be disallowed. The Court found no instances of duplicative services that have not been disallowed for other reasons.

The Court has reviewed each and every one of the Law Firm's entries in both the Interim Application and the Final Application. As noted, the Court agrees with Radulovich that the Law Firm should not be compensated for those services that the Trustee, rather than an attorney for the Trustee, is required to perform under § 704(a) of the Bankruptcy Code. The Court also agrees with Radulovich that the Law Firm should not be compensated for those services that could have been performed by a para-professional at a lower hourly rate, services that are ministerial or clerical in nature, or services that are duplicative.

However, the Court rejects Radulovich's more generalized allegations that *none* of the Law Firm's services provided any benefit to the estate, or that all of the Law Firm's services were performed to the detriment of the creditors. The Trustee's final report demonstrates that the Trustee was successful in generating $177,722.37 of proceeds from the sale of the Columbus Property. Radulovich will receive $55,912.87 from that sale. She is easily the largest beneficiary of the sale. Moreover, absent the Trustee's actions to sell the Columbus Property, there does not appear to have been any path for Radulovich to force a sale of the Columbus Property. There is no dispute in the record that Radulovich has held the State Court Judgment since 2001, yet it remains unpaid. Although Radulovich filed a Notice of Judgment Lien on the Columbus Property, Radulovich had not realized on the judgment lien prior to the filing of the bankruptcy case and the Trustee correctly

-14-

14-47317-pjs    Doc 82    Filed 09/14/15    Entered 09/14/15 16:00:49    Page 14 of 16

pointed out at the hearing that once William received his discharge on August 5, 2014, under Michigan Compiled Laws § 600.2809(6)(d), Radulovich's judgment lien was extinguished. The sale of the Columbus Property by the Trustee, with the assistance of the Law Firm, unquestionably provided Radulovich with a substantial benefit.

The Court also rejects Radulovich's conclusory allegations that the Trustee deliberately acted to run up the fees – or, as described in paragraph 11 of the Supplemental Objections, to "pound the case" – to the detriment of the creditors. As explained in this opinion, the Court agrees that some of the Law Firm's entries are not compensable, but Radulovich has no basis to assert that the Trustee – who has served as a panel trustee in this district for nearly 30 years, and has a reputation for diligence and excellence – has tried to deliberately cause the estate to pay excessive fees. The rhetoric of "bad faith" and "breach of fiduciary duty" contained in the pro se objection filed by Radulovich before she retained a new attorney is not supported by even a scintilla of evidence in the record.

As noted earlier, the failure of the Law Firm to break its time down into project categories as required by L.B.R. 2016-1(a)(15)(B) makes it harder to assess the reasonableness of the hours expended by the Law Firm. In other circumstances, where the requested fees are larger or the services more complex in nature, a failure of an applicant to break down its time by project categories may require disallowance of the requested fees. But having now reviewed each and every one of the Law Firm's entries, so as to enable the Court to consider Radulovich's specific objections to the services rendered, the Court concludes that no additional reduction is warranted in this case because of the Law Firm's failure to comply with this local rule. The Court cautions the Law Firm in the future to ensure that it complies with the requirements of this rule when they are applicable.

The Court construes Radulovich's objections as going to both elements of the lodestar analysis: the reasonableness of the hours expended and the reasonableness of the hourly rates charged. In sum, the Court finds that there is some merit to the objections. Therefore, the Court sustains Radulovich's objections in part, and makes the following reductions to the fees requested by the Law Firm: $2,050.00 for those services described in this opinion that should have been performed by the Trustee rather than the Law Firm; $200.00 for those services described in this opinion that should have been performed either by a para-professional or by an attorney at a lower hourly rate than O'Connor; and $750.00 for those services described in this opinion that are ministerial or clerical in nature. These reductions total $3,000.00. Except to the extent set forth herein, and reflected in these reductions, Radulovich's objections and Supplemental Objection are overruled. The Court therefore awards the Law Firm final fees in the amount of $15,199.00 and expenses in the amount of $334.46. This award encompasses both the fees requested by the Law Firm in the Interim Application and in the Final Application. The Court will enter a separate order consistent with this opinion.

.

**Signed on September 14, 2015**

                                              **/s/ Phillip J. Shefferly**
                                            **Phillip J. Shefferly**
                                            **United States Bankruptcy Judge**

14-47317-pjs    Doc 82    Filed 09/14/15    Entered 09/14/15 16:00:49    Page 16 of 16